## TARRANT COUNTY WATER CONTROL & IMPROVEMENT DIST. NO. 1 v. REID.

### No. 14837.

Court of Civil Appeals of Texas.
Fort Worth.
May 30, 1947.

Rehearing Denied June 27, 1947.

Samuels, Brown, Herman & Scott, of Fort Worth, for appellant.

Callaway, Wade & Davis, of Fort Worth, for appellee.

HALL, Justice.

On December 10, 1945, appellee H. N. (Jackie) Reid sued appellant Tarrant County Water Control and Improvement District No. 1 in the 48th District Court of Tarrant Count, Texas, alleging an action of permanently injuring, damaging and/or taking appellee's land (a 47½ acre tract) caused by the construction, erection, and maintenance of Eagle Mountain Dam and the lake created thereby, resulting in the slowing down of the overflow water across appellee's land thereby depositing sand, gravel, and other debris in great quantities upon same, which destroyed its usefulness. He further alleged that this slowing down of water caused the channel of the river adjacent to his land and the branch thereof running through his land to be filled with sand to the point where they were wholly inadequate to carry the normal flow of water. That the damage and/or the taking of his land began in the year of 1941 during a flood period, that the injury done to his land by the sand deposits at that time, caused by the slowing down of the water in the stream, was permanent.

Defendant's answer discloses, among other grounds of defense, the two-year statute of limitations. Vernon's Ann.Civ. St. art. 5526.

On the 24th day of September, 1946, the court rendered judgment in favor of appellee in the sum of $9,425.00, based upon jury findings. The court further found that the money judgment was rendered for a taking of appellee's land within the meaning of the terms of the Constitution of Texas, and granted appellant an easement in and upon said land for the use and flow of water to Eagle Mountain Lake and the submergence of said land from any cause, directly or indirectly attributable to Eagle Mountain Lake and Bridgeport Lake for all times.

Appellant filed a motion for judgment non obstante veredicto, stating as one of its grounds to support the motion that the cause of action set up by appellee was barred by the statute of limitations of two years, which was by the court overruled; from said adverse ruling and judgment appellant perfects this appeal and relies upon five points of error for reversal of this case. We will first discuss appellant's point of error No. four, for the reason that if the two-year statute of limitations was interposed, we need not then discuss the remainder of appellant's points of error. Said point is quoted as follows:

"Under the uncontroverted facts the cause of action asserted by plaintiff is one for a damaging of his lands within the meaning of Art. I, Sec. 17 of the Constitution of Texas, Vernon's Ann.St.; to which the two-year statute of limitations is applicable, and the cause of action having accrued not later than June 9, 1941, the instant suit filed December 10, 1945, is barred by the two-year statute of limitation."

Appellee admits in his brief that if his cause of action is simply one of damaging the land in question as distinguished from a taking thereof, then the two-year statute applies and the cause of action is barred. Of course his contention is that his land has been appropriated and taken by appellant. Therefore, it will take a complete analysis of the facts in the case to determine (granting that it presents a cause of action, which we are not passing upon at this time) first, whether the cause of action is for "damage" to the land, and therefore barred by the two-year statute of limitation under R.C.S.1925, Art. 5526, or second, as to whether the cause of action is for the "taking" of the land under the constitutional provision in Art. I, Sec. 17, wherein the law of prescription would apply. Said section reads in part as follows:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money; * * *."

A review of appellee's testimony shows that he was reared on the place in question, that before 1941 the river, from bank to bank at the top, was approximately 90 to 100 feet wide, and at the bottom it was more than 40 to 45 feet wide, that it would range in depth from 20 to 25 feet, that the slough running across his land was approximately 40 feet wide at the top and about 20 feet wide at the bed, that the flood of 1941 filled up these channels with sand and left his land covered with sand and debris, thereby destroying the value of same; that

the land had overflowed before the building of the dam.

There is no controversy between the parties that appellee's land is not damaged by the overflow of water coming down the river and the slough across his place. He alleged and proved to the satisfaction of the jury the extent of his damage but as to the determination of the acts of appellant in building the dam as being the direct or proximate cause of the damage is not essential in discussing the question of limitation.

Appellee testified that his land was located approximately three air-line miles upstream from the body of the lake, and about eleven air-line miles from the dam creating said lake in question.

Appellee relies principally upon the holding in the case of Tarrant County Water Control & Improvement District No. 1 v. Fowler, Tex.Civ.App., 175 S.W.2d 694, 698, writ refused for want of merit by Supreme Court, 142 Tex. 375, 179 S.W.2d 250, to sustain the trial court's judgment in finding that the action of appellant in constructing the water dam in question eleven miles down stream from appellee's land was in effect the "taking" of said land by causing the water to flow slower by and through his place, thus leaving sand deposits upon it.

An analysis of the holding in the Fowler case, supra, reveals that the dam under discussion in that case was constructed so as to "take" Fowler's land by submersion. It was to be a part of the lake basin and when the water was ten feet over the spillway, approximately fifty acres of Fowler's land would be submerged, at nineteen feet over the spillway, 111 acres would be submerged, and by closing the gates, the water reaching thereto, his land would be entirely covered by water and the court stated in compliance with such facts the following:

"We think the evidence shows there had been a 'taking' within the meaning of the Constitution, and that appellant is wrongfully using appellee's land without having either condemned the same or compensated him therefor."

The court held, therefore, that when there is a "taking" as in the Fowler case, a claim would not become barred before the period necessary to acquire land by adverse possession. This holding was based upon the law as outlined in 18 Am.Jur., a portion of Section 394, page 1042, which said opinion quotes as follows:

"* * * on the other hand, it is held that where the Constitution requires compensation first to be paid before an owner's land is taken, the burden of prosecuting his claim for compensation cannot be placed on the owner prior to the running of a prescriptive period * * *."

For further authorities, see Fowler case, supra.

■ The case of McCammon & Lang Lumber Co. et al. v. Trinity & B. V. Ry. Co., 104 Tex. 8, 133 S.W. 247, 36 L.R.A.,N. S., 662, Ann.Cas.1913E, 870, cited by appellant, points out that "in the constitutional provision as to compensation for property taken for public use, the term 'property' includes the fee-simple title to the thing owned, whether it be burdened with an easement or not; and the term 'taken' includes the appropriation of that thing or of some interest or estate in it, by actual, physical possession, such as exists when a railroad is constructed and operated on it."

Bearing in mind the rule announced in the Fowler case to the effect that where land is taken within the meaning of the Constitution the claim is not barred prior to the running of the prescriptive period, which is ten years in this state, and the holding in the McCammon case, supra, which establishes the rule that a "taking" results from an actual physical invasion of the property and that injury to land not actually occupied only affords a cause of action for "damage" to the land:

We will now look to the facts in this case to see whether or not the land of appellee was actually "taken" or "damaged."

Appellee's land is situated above the lake in the flood-way of the water source that feeds the lake, at the respective distances from the lake shore and the dam as outlined above.

In February, 1934, the dam in question was completed. The testimony of appellee is to the effect that the flood during the years 1941 and 1942 caused permanent injury to his lands. He sued appellant on the theory that the dead body of water comprising the lake retarded the velocity of the flow of water in the channel as it passed the vicinity of appellee's land, and caused sand to be deposited in the bed of the river with the result that appellee's land was also flooded and sand deposits left by the slow running water caused by the building of said dam.

Granting, for the purpose of disposing of this point on limitation, that such allegations were proven as true, did such cause of action constitute a "taking" under the law, or was it merely a "damage" to the land? For the answer to these two questions we will look principally to Texas authorities.

Under Art. I, Sect. 17, of the State Constitution, we find as set out in the McCammon case, supra, that when the land is "taken" it requires condemnation and precompensation; when land is damaged, as set out under the same Article, it is not subject to condemnation and precompensation.

Such phase of the law applied to the facts in this case raise other inquiries. Do the state of facts as alleged and proven in this case submit basis for appellant to have condemned appellee's land either in the year 1934, when it started constructing said dam, or in the year 1941 when the injury occurred; and/or did the construction of said dam establish facts sufficient for appellee Reid to have either sued and enjoined appellant from constructing said dam until they would have paid him for "taking" of his land, or to have enjoined the operation of said dam after the injury in 1941? We find not.

■ The great weight of authority holds that where the owner's land which has been damaged is abutting to the land occupied by the project and/or is so situated with reference to the project that such owner's land suffers from injury by reason of the operation of the project, that a claim for such injury becomes one of "damage" rather than of "taking."

It was held in the case of Dallas Hunting & Fishing Club v. Dallas County Bois D'arc Island Levee District, Tex.Civ.App., 235 S.W. 607, that where the district built a levee which would cause water to run upon another's land, with great violence, across it and stand for a long period of time, did not constitute the taking of the property but such actions were held to be merely a damage to such land.

In the case of Donna Irrigation District No. 1 v. Piper, Tex.Civ.App., 269 S.W. 157, 160, it was held that even though the broadening and heightening of the embankment along a channel would damage or destroy adjoining lands, yet under the terms of the Constitution such cause of action would not be that of "taking" the land; such rule announced in that case is applicable to the case at bar:

"If appellants had been guilty of taking the property of appellees by broadening the base and increasing the height of its levees, it was indeed a long distance appropriation, because the nearest tract of land is 1,000 feet from the levee, and others are at a distance of 1½ miles. If appellants were compelled to condemn and pay for all the lands in the valley of the Rio Grande that are reached by waters that flow by or near their property, no irrigation company could be maintained."

In the case of City Commissioners of Port Arthur et al. v. Fant et al., Tex.Civ. App., 193 S.W. 334, 345, wherein the city, in order to provide proper drainage, planned to construct a ditch down Eighth Street, suit was brought to enjoin its construction on the grounds that same constituted the "taking" of plaintiff's property under the constitution, and that the City should pay for such property before it undertook to take same. It was held that adjoining property owners to said street did not have the right to injunction because the City was not "taking" the land under the Constitution. Said opinion reads in part as follows:

"We are not deciding in this case any proposition of damages, whether they would properly arise, or, if so, when they would properly arise, but we are deciding only that in the sense that the word 'taken' is used in the Constitution in Art. 1, § 17, the word 'taken' does not apply where the fee-simple title has not been taken, or encroached upon in some way, in the sense that compensation must be first made before possession can be taken."

Judge Looney, who wrote the opinion in the Fowler case, supra, also wrote the opinion in the case of Duvall v. City of Dallas et al., Tex.Civ.App., 27 S.W.2d 1105, writ refused, wherein the facts show that the City ordered a street closed, on the theory that the T & P Ry. was to build an underpass which was to result in creating a grade separation, that would affect the two lots in question, and the owner sought to enjoin the construction until he had first been compensated for the "taking" of his property. The opinion recites in substance that since the property in question was 60 feet east of the point where the street would be cut and blocked, the same would neither be physically taken or invaded, even though appellant would suffer damages therefrom, and in denying the writ, the opinion further holds that while construing Art. I, Sec. 17, of the Constitution, our courts have consistently held that a "taking" of property, within its meaning, is an appropriation, and not simply the infliction of an incidental injury.

We, therefore, cannot maintain that the overflow of appellee's land in 1941–42, under the state of facts in this case, would set the law of easement by prescription in motion so that if continued to 1951–52, appellant would acquire an easement title to appellee's land, because the acquisition of easement by prescription follows the analogy of acquiring title to land by "adverse possession". The facts in this case will not supply the many necessary elements to support the 10 year statute of limitations, Vernon's Ann.Civ.St. Art. 5510. Article 5515, R.C.S., defines adverse possession as " * * * an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." Under said statute it was essential for appellee to have proved an actual invasion of or trespass upon his land by appellant before the 10 year limitation statute would apply. See

Quanah, A. & P. Ry. Co. v. Wiseman, Tex. Civ.App., 247 S.W. 695.

There was no proof in this case that the land would not have been flooded if the dam had not been built, but as stated above, there is testimony that it had been flooded prior to the building of the dam. The record does not disclose testimony that could be construed to mean that appellant in constructing its dam had in its plans or specifications the taking of appellee's land within the confines of the lake, but appellee's testimony does show that even though the dam was built in 1934, the shore of the lake has not, as yet, reached appellee's land by some three miles, so we have come to the conclusion from the facts in the case, and the law applicable thereto that any cause of action that appellee may have had against appellant by reason of appellant's body of water slowing down the stream passing by and through appellee's land was one for "damage" rather than for "taking" of his land, and therefore barred by the two-year statute of limitation.

The many cases hereinafter cited are, in our opinion, analogous to the case at bar wherein the courts have held that the two-year statute of limitation bars the claim after the date of injury. They are as follows, to-wit: Clark v. Dyer, 81 Tex. 339, 16 S.W. 1061; Missouri, K. & T. Ry. Co. of Texas v. Graham, 12 Tex.Civ.App. 54, 33 S.W. 576; Texas & P. Ry. Co. v. Maddox, 26 Tex.Civ.App. 297, 63 S.W. 134, writ refused; City of Houston v. Houston, E. & W. T. R. Co. et al., 26 Tex.Civ.App. 228, 63 S.W. 1056; International & G. N. R. Co. v. Kyle, Tex.Civ.App., 101 S.W. 272; Gulf, C. & S. F. Ry. Co. v. Caldwell, Tex. Civ.App., 102 S.W. 461; Abilene Light & Water Co. v. Clack, 58 Tex.Civ.App. 129, 124 S.W. 201; Wichita Valley Ry. Co. v. Marshall, Tex.Civ.App., 37 S.W.2d 756; Beck v. American Rio Grande Land & Irrigation Co., Tex.Civ.App., 39 S.W.2d 640, writ refused; City of Texarkana v. Rhyne, 56 S.W.2d 263; Id., Tex.Com.App., 86 S.W.2d 215, Bowie Sewerage Co. v. Vann, Tex.Civ.App., 59 S.W.2d 180; Vann v. Bowie Sewerage Co., Tex.Com.App., 90 S.W.2d 561; Wichita County Water Improvement District No. 1 v. Pearce, Tex. Civ.App., 59 S.W.2d 183; City of Athens v. Evans, Tex.Com.App., 63 S.W.2d 379; Kolberg et al. v. Hidalgo County Water Improvement District No. 2, Tex.Civ.App., 110 S.W.2d 961.

The disposition of appellant's point of error No. 4 in the affirmative is conclusive of the rights of the parties. It therefore becomes unnecessary to consider the remaining points.

The judgment of the trial court will be reversed and here rendered for the appellant.

On Motion for Rehearing.

On motion for rehearing appellee complains on the ground that we failed to discuss his testimony relative to the question of appellant "taking" his land, wherein he testified in substance that about six months prior to the time of trial water had backed up in the bed of the river to within 500 airline yards of his land. It is true that the above testimony is not referred to in our opinion, but it was considered, and it was determined that such testimony was not sufficient to establish a taking of the land by appellant even though it might have been pertinent in a suit for damages to the land.

Appellee's motion is respectfully overruled.